## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS,
## MARSHALL DIVISION

| | | |
|---|---|---|
| INNOVATIVE DISPLAY TECHNOLOGIES LLC, | § § § | |
| Plaintiff, | § § | C.A. No. 2:16-cv-932 |
| v. | § § | JURY TRIAL DEMANDED |
| LG DISPLAY CO., LTD., LG DISPLAY AMERICA, INC., LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., LG ELECTRONICS MOBILECOMM U.S.A., INC., LG ELECTRONICS ALABAMA INC., VIZIO, INC., ASUSTeK COMPUTER INC., and ASUS COMPUTER INTERNATIONAL, | § § § § § § § § § | |
| Defendants. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Innovative Display Technologies LLC ("Plaintiff") by and through its undersigned counsel, file this Original Complaint against LG Display Co., Ltd.; LG Display America, Inc., LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Mobilecomm U.S.A., Inc., LG Electronics Alabama, Inc., VIZIO, Inc., ASUSTeK Computer Inc., and ASUS Computer International (collectively, "Defendants").

## THE PARTIES

1.     Innovative Display Technologies LLC ("IDT") is a Texas limited liability company with its principal place of business located at 2400 Dallas Parkway, Suite 200, Plano, Texas 75093.

2.     Upon information and belief, LG Display Co., Ltd. ("LG Display") is a corporation in South Korea located at LG U+ Bldg., Hangang-ro 3-ga, Yongsan-gu, Seoul, Korea. Upon information and belief, LG Display may be served with process in South Korea pursuant to the

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

3.      Upon information and belief, LG Display America, Inc. ("LG Display America") is a California corporation with its principal place of business at 2540 North First Street, Suite 400, San Jose, California 95131. Upon information and belief, LG Display America may be served with process by serving its agent for service, Dong Hoon Han, LG Display America, Inc., 2540 North First Street, Suite 400, San Jose, California 95131. Upon information and belief, LG Display America is a subsidiary of LG Display.

4.      LG Display and LG Display America are collectively called "LGD" in this complaint.

5.      Upon information and belief, LGD has conducted and regularly conducts business within this District, has purposefully availed itself of the privileges of conducting business in this District, and has sought protection and benefit from the laws of the State of Texas. In addition thereto, LGD has offices in the state of Texas including, but not limited to in Houston, Texas, at 19500 State Highway 249, Suite 249, Houston, TX 77070, U.S.A., and in Austin, Texas, at 9600 Great Hills Trail, Suite 150W, Austin, TX 78759, U.S.A.

6.      Upon information and belief, LG Electronics, Inc. ("LG Electronics") is a corporation in South Korea located at LG Twin Tower 128, Yeoui-daero, Yeongdeungpo-gu, Seoul, Korea, 150-721, South Korea. Upon information and belief, LG Electronics may be served with process in South Korea pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

7.      Upon information and belief, LG Electronics U.S.A., Inc. ("LG Electronics U.S.A.") is a Delaware Corporation with offices at 1000 Sylvan Avenue, Englewood Cliffs, New

PLAINTIFF'S ORIGINAL COMPLAINT

Jersey 07632. Upon information and belief, LG Electronics U.S.A. may be served with process by serving its registered agent, United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. Upon information and belief, LG Electronics U.S.A. is a subsidiary of LG Electronics.

8.      Upon information and belief, LG Electronics Mobilecomm U.S.A., Inc. ("LG Mobile") is a California Corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Upon information and belief, LG Mobile may be served with process by serving its Agent for Service, National Registered Agents, Inc., 818 West Seventh Street, Suite 930, Los Angeles, California 90017. Upon information and belief, LG Mobile is a subsidiary of LG Electronics.

9.      Upon information and belief, LG Electronics Alabama Inc. ("LG Alabama") is an Alabama Corporation with its principal place of business at 201 James Record Road, Huntsville, Alabama 35824. Upon information and belief, LG Alabama may be served with process by serving its registered agent, Kyu M Yu at 201 James Record Road, Huntsville Alabama, 35824. Upon information and belief, LG Alabama is a subsidiary of LG Electronics.

10.     LG Electronics, LG Electronics U.S.A., LG Mobile, and LG Alabama are collectively called "LGE" in this complaint.

11.     Upon information and belief, VIZIO, Inc. ("VIZIO") is a California corporation with its principal place of business at 39 Tesla, Irvine, California 92618. Upon information and belief, VIZIO may be served with process by serving its registered agent, CT Corporation System, 818 W. Seventh Street, Los Angeles, California 90017.

12.     Upon information and belief, ASUSTeK Computer Inc. ("ASUSTeK") is a corporation organized and existing under the laws of Taiwan, with its principal place of business located at No. 15, LiTe Road, Peitou, Taipei 112, Taiwan, R.O.C. 5.

13.     Upon information and belief, ASUS Computer International ("ASUS Int'l") is a corporation organized and existing under the laws of California, with its principal place of business located at 800 Corporate Way, Fremont, California 94539. Upon information and belief, ASUS Int'l may be served with process by serving its registered agent, Godwin Yan, 800 Corporate Way, Fremont, California 94539. ASUSTek and ASUS Int'l are collectively called "ASUS" in this complaint. Upon information and belief, ASUS Int'l is a subsidiary of ASUSTeK.

## JURISDICTION AND VENUE

14.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

15.     As further detailed herein, this Court has personal jurisdiction over LGD. LGD is amenable to service of summons for this action. Furthermore, personal jurisdiction over LGD in this action comports with due process. LGD has conducted and regularly conducts business within the United States and this District. LGD has purposefully availed itself of the privileges of conducting business in the United States and, more specifically, in this District. LGD has sought protection and benefit from the laws of the State of Texas by placing infringing products into the stream of commerce through an established distribution channel with the expectation and/or knowledge that they will be purchased by consumers in this District, as well as owning and operating offices within the State of Texas, as discussed herein. In addition, LGD has effectively consented to jurisdiction within this District given its actions as they relate to previous patent

infringement lawsuits brought by the Plaintiff in this District.[1] In the foregoing prior cases, on related patents sharing the same parent patent, brought by the Plaintiff, LGD, pursuant to various indemnity obligations, took over the litigation on behalf of certain defendants in those cases, and others, hiring its own counsel, attending hearings, participating in mediations, and ultimately participating in the resolution of those cases. Plaintiff's causes of action arise directly from LGD's business contacts and other activities in this District, as detailed herein.

16.     LGD–directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents–ships, distributes, offers for sale, and/or sells its products in the United States and this District. LGD has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation and/or knowledge that they will be purchased by consumers in this District. LGD knowingly and purposefully ships infringing products into and within this District through an established distribution channel. These infringing products have been purchased by consumers in this District. Upon information and belief, LGD has committed the tort of patent infringement in this District and/or has induced others to commit patent infringement in this District.

17.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), in that LGD is subject to personal jurisdiction in this District, and therefore is deemed to reside in this District for purposes of venue, and, upon information and belief, LGD has committed acts within this judicial District giving rise to this action and does business in this District, including but not limited to making sales in this District, providing service and support to its respective customers in this District, and/or operating an interactive website that is available to

---

[1] See e.g., *Innovative Display Technologies LLC v. Dell, Inc.*, Case No. 2:13-cv-00523-RSP, Federal District Court, Eastern District of Texas (Marshall Division); *Innovative Display Technologies LLC v. Hewlett-Packard Company*, Case No. 2:13-cv-00524-JRG-RSP, Federal District Court, Eastern District of Texas (Marshall Division).

PLAINTIFF'S ORIGINAL COMPLAINT

persons in this District, which website advertises, markets, and/or offers for sale infringing

products. In addition, LGD has effectively consented to venue within this District given its actions

as they relate to previous patent infringement lawsuits on related patents sharing the same parent

patent brought by the Plaintiff in this District.[2] In the foregoing prior cases brought by the Plaintiff,

LGD, pursuant to various indemnity obligations, took over the litigation on behalf of certain

defendants in those cases, and others, hiring its own counsel, attending hearings, participating in

mediations, and ultimately participating in the resolution of those cases. Finally, the patents-in-

suit share several of the same limitations as the previously litigated patents by IDT in this District,

which have been subject to claim construction in this District that further supports venue in this

District of this matter.

18.     As further detailed herein, this Court has personal jurisdiction over LGE. LGE is

amenable to service of summons for this action. Furthermore, personal jurisdiction over LGE in

this action comports with due process. LGE has conducted and regularly conducts business within

the United States and this District. LGE has purposefully availed itself of the privileges of

conducting business in the United States and, more specifically, in this District. LGE has sought

protection and benefit from the laws of the State of Texas by placing infringing products into the

stream of commerce through an established distribution channel with the expectation and/or

knowledge that they will be purchased by consumers in this District. Plaintiff's causes of action

arise directly from LGE's business contacts and other activities in this District, as detailed herein.

19.     LGE–directly or through intermediaries (including distributors, retailers, and

others), subsidiaries, alter egos, and/or agents–ships, distributes, offers for sale, and/or sells its

---

[2] *See e.g.*, *Innovative Display Technologies LLC v. Dell, Inc.*, Case No. 2:13-cv-00523-RSP, Federal District Court, Eastern District of Texas (Marshall Division); *Innovative Display Technologies LLC v. Hewlett-Packard Company*, Case No. 2:13-cv-00524-JRG-RSP, Federal District Court, Eastern District of Texas (Marshall Division).

PLAINTIFF'S ORIGINAL COMPLAINT

products in the United States and this District. LGE has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation and/or knowledge that they will be purchased by consumers in this District. LGE knowingly and purposefully ships infringing products into and within this District through an established distribution channel. These infringing products have been purchased by consumers in this District. Upon information and belief, LGE has committed the tort of patent infringement in this District and/or has induced others to commit patent infringement in this District.

20.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), in that LGE is subject to personal jurisdiction in this District, and therefore is deemed to reside in this District for purposes of venue, and, upon information and belief, LGE has committed acts within this judicial District giving rise to this action and does business in this District, including but not limited to making sales in this District, providing service and support to their respective customers in this District, and/or operating an interactive website that is available to persons in this District, which website advertises, markets, and/or offers for sale infringing products. Finally, the patents-in-suit share several of the same limitations as the previously litigated patents by IDT in this District, which have been subject to claim construction in this District, which further supports venue in this District of this matter.

21.     As further detailed herein, this Court has personal jurisdiction over VIZIO. VIZIO is amenable to service of summons for this action. Furthermore, personal jurisdiction over VIZIO in this action comports with due process. VIZIO has conducted and regularly conducts business within the United States and this District. VIZIO has purposefully availed itself of the privileges of conducting business in the United States and, more specifically, in this District. VIZIO has sought protection and benefit from the laws of the State of Texas by placing infringing products

PLAINTIFF'S ORIGINAL COMPLAINT

into the stream of commerce through an established distribution channel with the expectation and/or knowledge that they will be purchased by consumers in this District. Plaintiffs' causes of action arise directly from VIZIO's business contacts and other activities in this District.

22.     VIZIO – directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its products in the United States and this District. VIZIO has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation and/or knowledge that they will be purchased by consumers in this District. VIZIO knowingly and purposefully ships infringing products into and within this District through an established distribution channel. These infringing products have been purchased by consumers in this District. Upon information and belief, VIZIO has committed the tort of patent infringement in this District and/or has induced others to commit patent infringement in this District.

23.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), in that VIZIO is subject to personal jurisdiction in this District, and therefore is deemed to reside in this District for purposes of venue, and, upon information and belief, VIZIO has committed acts within this judicial District giving rise to this action and does business in this District, including but not limited to making sales in this District, providing service and support to their respective customers in this District, and/or operating an interactive website that is available to persons in this District, which website advertises, markets, and/or offers for sale infringing products. Finally, the patents-in-suit, share several of the same limitations as the previously litigated patents by IDT in this District, which have been subject to claim construction in this District, which further supports venue in this District of this matter.

PLAINTIFF'S ORIGINAL COMPLAINT

24.     As further detailed herein, this Court has personal jurisdiction over ASUS. ASUS is amenable to service of summons for this action. Furthermore, personal jurisdiction over ASUS in this action comports with due process. ASUS has conducted and regularly conducts business within the United States and this District. ASUS has purposefully availed itself of the privileges of conducting business in the United States and, more specifically, in this District. ASUS has sought protection and benefit from the laws of the State of Texas by placing infringing products into the stream of commerce through an established distribution channel with the expectation and/or knowledge that they will be purchased by consumers in this District. Plaintiffs' causes of action arise directly from ASUS's business contacts and other activities in this District.

25.     ASUS – directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its products in the United States and this District. ASUS has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation and/or knowledge that they will be purchased by consumers in this District. ASUS knowingly and purposefully ships infringing products into and within this District through an established distribution channel. These infringing products have been purchased by consumers in this District. Upon information and belief, ASUS has committed the tort of patent infringement in this District and/or has induced others to commit patent infringement in this District.

26.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), in that ASUS is subject to personal jurisdiction in this District, and therefore is deemed to reside in this District for purposes of venue, and, upon information and belief, ASUS has committed acts within this judicial District giving rise to this action and does business in this District, including but not limited to making sales in this District, providing service and support to

their respective customers in this District, and/or operating an interactive website that is available to persons in this District, which website advertises, markets, and/or offers for sale infringing products. Finally, the patents-in-suit, share several of the same limitations as the previously litigated patents by IDT in this District, which have been subject to claim construction in this District, which further supports venue in this District of this matter.

## BACKGROUND

### A.    The Patents-In-Suit

27.    U.S. Patent No. 7,322,730 titled "Light Emitting Panel Assemblies" ("the '730 patent") was duly and legally issued by the U.S. Patent and Trademark Office on January 29, 2008, after full and fair examination. Jeffery R. Parker is the sole inventor listed on the '730 patent. A true and correct copy of the '730 patent is attached as **Exhibit A** and made a part hereof.

28.    U.S. Patent No. 7,178,965 titled "Light Emitting Panel Assemblies Having LEDs Of Multiple Colors" ("the '965 patent") was duly and legally issued by the U.S. Patent and Trademark Office on February 20, 2007, after full and fair examination. Jeffery R. Parker is the sole inventor listed on the '965 patent. A true and correct copy of the '965 patent is attached as **Exhibit B** and made a part hereof. The '730 and '965 patents are collectively called the "patents-in-suit" in this complaint.

29.    On June 26, 2013, IDT was assigned all of the right, title, and interest in the patents-in-suit, including the exclusive right to sue and collect for its own use and benefit all claims for damages by reason of past infringement or use of the patents-in-suit.

30.    The patents-in-suit all share the same ultimate parent patent, U.S. Patent No. 5,613,751. The patents-in-suit share an inventor, subject matter, and claim terms. The accused products infringe the patents-in-suit based on the use of the same technology, *i.e.*, backlights for LCDs.

B.      **Defendants' Infringing Conduct**

31.     Upon information and belief, Defendants make, use, offer to sell, and/or sell within, and/or import into the United States display products that use the fundamental technologies covered by the patents-in-suit. Upon information and belief, the infringing display products include, but are not limited to, mobile phones, tablets, televisions, monitors, laptops, and liquid crystal display modules ("LCMs"). The infringing display products fall into two categories: 1) those with edge-lit backlights; and 2) those with 2-D array backlights, each for illuminating liquid crystal displays. LGD has made, sold, and/or imported LCMs containing backlights from both of those categories. By way of example only, Plaintiff identifies the following LGD LCMs as containing edge-lit backlights: LC550DUH-SCM1, LC490EQE-XGM1, LC215EUE-TCA1, and LP140WH2-TLE2; and the following LGD LCMs as containing 2-D array backlights: LC420DUE-SFU1 and LC470DUG-JFR1. Upon information and belief, LGE, VIZIO, and Asus sell LGD LCMs and/or incorporate them into end user products (*e.g.*, mobile phones, tablets, televisions, monitors, laptops) that they made, sold, and/or imported into the United States. The end user products and their respective LCMs with 2-D array backlights infringe both patents-in-suit, whereas those with edge-lit backlights infringe at least the '730 patent.

32.     The infringing display products having either edge-lit backlights or 2-D array backlights for their LCDs incorporate the fundamental technologies covered by the '730 patent. For example, the edge-lit and 2-D array backlights for LCDs in these infringing display products include a light emitter having at least one light emitting area as required by claim 10. Further, both types of infringing products have a separate transparent sheet or film that overlays the light emitting area with an air gap in between. Moreover, the sheet or film in each type of infringing product has a pattern of deformities, where the deformities vary at different locations in order to

direct the light such that the light will pass through a liquid crystal with low loss. Lastly, the film or sheet in each type of the infringing product causes a change in color or color correction.

33.     The infringing display products with 2-D array backlights for LCDs incorporate the fundamental technologies covered by the '965 patent. For example, the 2-D array backlights for LCDs in these infringing display products include a light emitting panel member having a light emitting surface as required by claim 1. Each infringing 2-D array backlight has a hollow area containing a plurality of light sources, which are LEDs in the accused products. The 2-D array backlights also have a transparent transition member associated with each light source which has a reflective or refractive means exterior to the light sources to redirect light from the light sources. The 2-D array backlights also have a sheet, film, or substrate in close proximity and generally parallel to the light emitting surface with optical deformities on or in at least one side, which redirect the light to suit the application of the accused product. Lastly, the accused products have an LCD positioned in close proximity to the sheet, film, or substrate.

34.     By incorporating the fundamental inventions covered by the patents-in-suit, Defendants can make improved products, including but not limited to, products with longer displays, thinner displays, and/or displays with a higher light output, a more uniform light output, a lower power requirement, and/or a longer battery life.

## COUNT I

### Patent Infringement of U.S. Patent No. 7,322,730 (All Defendants)

35.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1-34 as though fully set forth herein.

36.     The '730 patent is valid and enforceable.

37.     Upon information and belief, Defendants have never been licensed, either expressly or impliedly, under the '730 patent for the accused display products in this case. For clarity, while

12

many parties have taken licenses to the patents-in-suit, Plaintiff is not accusing any licensed products in this lawsuit.

38.     Upon information and belief, to the extent any marking or notice was required by 35 U.S.C. § 287, IDT and its predecessors have complied with the requirements of that statute by providing actual or constructive notice to Defendants of their alleged infringement.

39.     Upon information and belief, Defendants have been directly infringing under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, and/or indirectly infringing, by way of inducement with specific intent under 35 U.S.C. § 271(b), the '730 patent by making, using, offering to sell, and/or selling to third-party distributors, and/or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, without authority, display products that include all of the limitations of one or more claims of the '730 patent, including but not limited to mobile phones, tablets, televisions, monitors, laptops, and liquid crystal display modules with edge-lit and 2-D array backlights for illuminating a liquid crystal display. For example, the edge-lit and 2-D array backlights for LCDs in these infringing display products include a light emitter having at least one light emitting area as required by claim 10. Further, both types of infringing products have a separate transparent sheet or film that overlays the light emitting area with an air gap in between. Moreover, the sheet or film in each type of infringing product has a pattern of deformities, where the deformities vary at different locations in order to direct the light such that the light will pass through a liquid crystal with low loss. Lastly, the film or sheet in each type of the infringing product causes a change in color or color correction. By incorporating the fundamental inventions covered by the '730 patent, Defendants can make improved products, including but not limited to, products

13

with longer displays, thinner displays, and/or displays with a higher light output, a more uniform light output, a lower power requirement, and/or a longer battery life.

40.     Upon information and belief, distributors, consumers, and other parties that purchase Defendants' display products that include all of the limitations of one or more claims of the '730 patent, including but not limited to mobile phones, tablets, televisions, monitors, laptops, and liquid crystal display modules with edge-lit and 2-D array backlights for illuminating a liquid crystal display, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the '730 patent by using, offering to sell, and/or selling to third-party distributors or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, those infringing display products.

41.     Upon information and belief, LGD had knowledge of the '730 patent and its infringing conduct at least since February 2013, as described below.

42.     Upon information and belief, on February 8, 2013, Mr. Robert Ranucci at Rambus (a prior owner of the patents-in-suit) sent a letter to LGD, describing the portfolio that includes the patents-in-suit, including enclosures with charts identifying the '730 patent, exemplary claims of the '730 patent, and a description of the features covered by the '730 patent. Upon information and belief, Rambus's letter also included an offer to license the patent portfolio to LGD. Upon information and belief, on February 21, 2013, LGD responded to Mr. Ranucci's letter stating that it appreciated Rambus identifying the patents and offering a license, but that it would take time for LGD to review the patents and products before it engaged in licensing discussions.

43.     Upon information and belief, VIZIO had knowledge of the '730 patent and its infringing conduct at least since April 2012, as described below.

**PLAINTIFF'S ORIGINAL COMPLAINT**

44.     Upon information and belief, at least as early as April 2012, Rambus, as a former owner of the patents-in-suit, presented a licensing demand to VIZIO, making an allegation that accused display products infringed Rambus's patent portfolio, including the '730 patent.

45.     Upon information and belief, thereafter, on December 7, 2012, VIZIO received a document from Rambus that further identified the '730 patent, exemplary claims from the '730 patent, and the subject matter of the '730 patent. Upon information and belief, licensing negotiations continued between VIZIO and Rambus for the portfolio that included the '730 patent. For example, upon information and belief, Rambus sent VIZIO a revised, proposed patent license agreement on September 28, 2012. Upon information and belief, Rambus and VIZIO continued to discuss the possibility of license, including calls and/or meetings in October and December 2012.

46.     Upon information and belief, ASUS had knowledge of the '730 patent and its infringing conduct since at least October 2012, as described below.

47.     Upon information and belief, at least as early as October 2012, Rambus sent a letter to ASUS at the above listed address, describing the portfolio that includes the patents-in-suit, including enclosures with charts identifying the '730 patent, exemplary claims of the '730 patent, and a description of the features covered by the '730 patent. Upon information and belief, Rambus's letter also included an offer to license the patent portfolio to ASUS.

48.     LGD's, VIZIO's, and ASUS's acts of infringement of the '730 patent have been willful and intentional. Since at least the above-mentioned dates of notice, they have been aware that their actions constituted infringement of the '730 patent by refusing to take a license and continuing to make, sell, and import display products that include all of the limitations of one or more claims of the '730 patent, and the risk of infringement was either known or so obvious that it should have been known. Instead, on information and belief, they took no action to cease

infringement. On the contrary, despite LGD indemnifying multiple customers for infringement and including, but not limited to, agreeing to settle litigation with the Plaintiff on behalf of those customers for infringement allegations of patents related to the patents-in-suit, LGD continued to sell products during the relevant timeframe that infringe the patents-in-suit. Moreover, LGD continued to sell infringing products during the relevant timeframe even though every other similarly situated LCM supplier that has been sued by the Plaintiff has resolved the litigation and taken a license to Plaintiff's patents. On information and belief, instead of taking a license during the relevant timeframe, LG, VIZIO, and ASUS, have ignored the actions of their competitors, continued to place their customers at risk, and opted to make the business decision to "efficiently infringe" the '730 patent. In doing so, they have willfully infringed the patents-in-suit. LGD's, ASUS's, and VIZIO's actions are an egregious case typified by willful misconduct.

49.     Upon information and belief, since at least the above-mentioned dates when LGD, VIZIO, and ASUS became aware of their infringement, they have actively induced, under U.S.C. § 271(b), third-party manufacturers, distributors, importers and/or consumers that purchase or sell display products that include all of the limitations of one or more claims of the '730 patent, including but not limited to mobile phones, tablets, televisions, monitors, laptops, and liquid crystal display modules with edge-lit and 2-D array backlights for illuminating a liquid crystal display, to directly infringe one or more claims of the '730 patent. Since at least the notice provided on the above-mentioned dates, LGD, VIZIO, and ASUS do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '730 patent. Upon information and belief, LGD, VIZIO, and ASUS intend to cause, and have taken affirmative steps to induce, infringement by these third-party manufacturers, distributors, importers, and/or consumers by, *inter alia*, creating advertisements that promote the infringing use of display

16

products, creating established distribution channels for these products into and within the United States, purchasing these products, manufacturing these products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

50.     As a direct and proximate result of these acts of patent infringement, Defendants have encroached on the exclusive rights of IDT and its licensees to practice the '730 patent, for which IDT is entitled to at least a reasonable royalty.

## COUNT II

## Patent Infringement of U.S. Patent No. 7,178,965 (LGD, LGE, and VIZIO)

51.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1-50 as though fully set forth herein.

52.     The '965 patent is valid and enforceable.

53.     Upon information and belief, LGD, LGE, and VIZIO have never been licensed, either expressly or impliedly, under the '965 patent for the accused display products in this case. For clarity, while many parties have taken licenses to the patents-in-suit, Plaintiff is not accusing any licensed products in this lawsuit.

54.     Upon information and belief, to the extent any marking or notice was required by 35 U.S.C. § 287, IDT and its predecessors have complied with the requirements of that statute by providing actual or constructive notice to LGD, LGE, and VIZIO of their alleged infringement.

55.     Upon information and belief, LGD, LGE, and VIZIO have been directly infringing under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, and/or indirectly infringing, by way of inducement with specific intent under 35 U.S.C. § 271(b), the '965 patent by making, using, offering to sell, and/or selling to third-party distributors, and/or consumers

(directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, without authority, display products that include all of the limitations of one or more claims of the '965 patent, including but not limited to televisions and LCD modules with 2-D array backlights for illuminating a liquid crystal display. The 2-D array backlights for LCDs in these infringing display products include a light emitting panel member having a light emitting surface as required by claim 1. Each infringing 2-D array backlight has a hollow area containing a plurality of light sources, which are LEDs in the accused products. The 2-D array backlights also have a transparent transition member associated with each light source which has a reflective or refractive means exterior to the light sources to redirect light from the light sources. The 2-D array backlights also have a sheet, film, or substrate in close proximity and generally parallel to the light emitting surface with optical deformities on or in at least one side, which redirect the light to suit the application of the accused product. Lastly, the accused products have an LCD positioned in close proximity to the sheet, film, or substrate.

56.     Upon information and belief, distributors, consumers, and other parties that purchase LGD's, LGE's, and VIZIO's display products that include all of the limitations of one or more claims of the '965 patent, including but not limited to televisions and LCD modules with 2-D array backlights for illuminating a liquid crystal display, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the '965 patent by using, offering to sell, and/or selling to third-party distributors or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, those infringing display products.

57.     Upon information and belief, LGD had knowledge of the '965 patent and its infringing conduct at least since February 2013, as described below.

58.     Upon information and belief, on February 8, 2013, Mr. Robert Ranucci at Rambus (a prior owner of the patents-in-suit) sent a letter to LGD, describing the portfolio that includes the patents-in-suit, including enclosures with charts identifying the '965 patent, exemplary claims of the '965 patent, and a description of the features covered by the '965 patent. Upon information and belief, Rambus's letter also included an offer to license the patent portfolio to LGD. Upon information and belief, on February 21, 2013, LGD responded to Mr. Ranucci's letter stating that it appreciated Rambus identifying the patents and offering a license, but that it would take time for LGD to review the patents and products before it engaged in licensing discussions.

59.     Upon information and belief, VIZIO had knowledge of the '965 patent and its infringing conduct at least since April 2012, as described below.

60.     Upon information and belief, at least as early as April 2012, Rambus, as a former owner of the patents-in-suit, presented a licensing demand to VIZIO, making an allegation that accused display products infringed Rambus's patent portfolio, including the '965 patent.

61.     Upon information and belief, thereafter, on December 7, 2012, VIZIO received a document from Rambus that further identified the '965 patent, exemplary claims from the '965 patent, and the subject matter of the '965 patent. Upon information and belief, licensing negotiations continued between VIZIO and Rambus for the portfolio that included the '965 patent. For example, upon information and belief, Rambus sent VIZIO a revised, proposed patent license agreement on September 28, 2012. Upon information and belief, Rambus and VIZIO continued to discuss the possibility of license, including calls and/or meetings in October and December 2012.

62.     LGD's and VIZIO's acts of infringement of the '965 patent have been willful and intentional. Since at least the above-mentioned date of notice, LGD and VIZIO have been aware that their actions constituted infringement of the '965 patent by refusing to take a license and

continuing to make, sell, and import display products that include all of the limitations of one or more claims of the '965 patent, and the risk of infringement was either known or so obvious that it should have been known. Instead, on information and belief, LGD and VIZIO took no action to cease infringement. On the contrary, despite LGD indemnifying multiple customers for infringement and including, but not limited to, agreeing to settle litigation with the Plaintiff on behalf of those customers for infringement allegations of patents related to the patents-in-suit, LGD continued to sell products during the relevant timeframe that infringe the patents-in-suit. Moreover, LGD continued to sell infringing products during the relevant timeframe even though every other similarly situated LCM supplier that has been sued by the Plaintiff has resolved the litigation and taken a license to Plaintiff's patents. On information and belief, instead of taking a license during the relevant timeframe, LGD and VIZIO have ignored the actions of their competitors, continued to place their customers at risk, and opted to make the business decision to "efficiently infringe" the '965 patent. In doing so, LGD and VIZIO have willfully infringed the patents-in-suit. LGD's and VIZIO's actions are an egregious case typified by willful misconduct.

63.    Upon information and belief, since at least the above-mentioned date when LGD and VIZIO became aware of their infringement, LGD and VIZIO have actively induced, under U.S.C. § 271(b), third-party manufacturers, distributors, importers and/or consumers that purchase or sell display products that include all of the limitations of one or more claims of the '965 patent, including but not limited to televisions and LCD modules with 2D-array backlights for illuminating a liquid crystal display, to directly infringe one or more claims of the '965 patent. Since at least the notice provided on the above-mentioned date, LGD and VIZIO do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '965 patent. Upon information and belief, LGD and VIZIO intend to cause, and have taken

affirmative steps to induce, infringement by these third-party manufacturers, distributors, importers, and/or consumers by, *inter alia*, creating advertisements that promote the infringing use of display products, creating established distribution channels for these products into and within the United States, purchasing these products, manufacturing these products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

64.     As a direct and proximate result of these acts of patent infringement, LGD, LGE, and VIZIO have encroached on the exclusive rights of IDT and its licensees to practice the '965 patent, for which IDT is entitled to at least a reasonable royalty.

## CONCLUSION

65.     Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

66.     Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute create an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

67.     Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

PLAINTIFF'S ORIGINAL COMPLAINT

## PRAYER FOR RELIEF

68.     Plaintiff respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

A.     A judgment that Defendants have infringed the patents-in-suit as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

B.     A judgment that Defendants have willfully infringed the patents-in-suit as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

C.     A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendants;

D.     A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages for willful infringement as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

E.     A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

F.     A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

G.     Such other and further relief as the Court deems just and equitable.

PLAINTIFF'S ORIGINAL COMPLAINT

Dated: August 24, 2016               Respectfully submitted,

/s/ *Jeffrey R. Bragalone*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Patrick J. Conroy
Texas Bar No. 24012448
Justin B. Kimble
Texas Bar No. 24036909
T. William Kennedy, Jr.
Texas Bar No. 24055771
Daniel F. Olejko
Pennsylvania Bar No. 205512
James Perkins
Texas Bar No. 24074881
**Bragalone Conroy PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6671
Fax: (214) 785-6680
jbragalone@bcpc-law.com
pconroy@bcpc-law.com
jkimble@bcpc-law.com
bkennedy@bcpc-law.com
dolejko@bcpc-law.com

PLAINTIFF'S ORIGINAL COMPLAINT